All right, Ms. Sanderson, you are reserved two minutes for rebuttal, so that gives you eight to begin. The floor is yours. Thank you, Your Honors. Yes, good morning. Carla Sanderson for Israel Garcia, defendant appellate. May it please the court. Mr. Garcia's trial counsel operated with an actual conflict of interest, which caused a lapse in representation. The standard of review here is de novo, as it involves a mixed question of law and fact. The actual conflict of interest, Your Honors, began when trial counsel was appointed to represent Sherrod Murphy, an individual with significant firsthand information regarding Mr. Garcia's case and defense. But I mean, it isn't, I mean, I guess, let's get the definitions, I suppose. For there to be an actual conflict, then it has to have been some, a conflict that adversely affected counsel's performance, right? Correct, Your Honor. Okay. And so here, there was a hearing, and Mr. Moskowitz made clear that his other client had really nothing to say other than what would be hearsay on the subject, right? Your Honor, trial counsel testified that Mr. Murphy had helpful information to Mr. Garcia's defense, and that's at Confidential Appendix 400 and Confidential Appendix 108. Mr. Murphy also would have testified that Garcia was not a gang member at the time of the homicide, at Appendix 400 and Confidential Appendix 113. Their interests diverged when Mr. Murphy could not share helpful information with Mr. Garcia due to Mr. Murphy's attorney-client privilege, and the Levy case explains that at that point, their interests diverged. But I thought, what was the information? Was there any direct evidence that he had, that Murphy had? Or was it hearsay? Your Honor, the hearsay determined... I mean, maybe that's enough. First of all... If it's information that could be explored through investigation, then that may be something. But I'm looking, I'm trying to understand whether he had any direct evidence. Yes, Your Honor... And then, where do you get all this data? Well, whether the conflict exists does not turn on admissibility. As in Levy, the conflict exists where, the joint representation conflict exists where the individual, here Sherrod Murphy, has information that's relevant to the defendant's defense. But if he does it on the lap, there has to be a lapse in representation, even if there's an actual conflict. And to show a lapse, we'd have to show there's some plausible alternative defense strategy or tactic that might have been pursued. So, going to Judge Walker and Judge Sullivan, I ask the same question. He didn't witness the murder, right, Murphy? There's differing accounts of that, Your Honor. In some of the 3,500 material, a witness does say he was present for the murder or present nearby. But Murphy didn't say, I witnessed the murder. Correct. Murphy did not say that, Your Honor. And he had, so he had no direct knowledge of the murder itself. The key thing that would have been here to say, but that Parker never told him, I guess it would be to impeach Parker. Isn't that your main point? There's multiple ways that it caused a lapse. Let's just stick with that one. If you crossed Parker on whether he lied when he told the government that he had told Murphy about the murder, Judge Rakoff said that you'd be stuck with his answer, that you couldn't use extrinsic evidence to try to disprove that. Isn't that true? Your Honor, trial counsel's cross-examination was hindered due to the conflict. First of all, he wouldn't have to call Murphy because Mr. Parker gave varying accounts of what he did after witnessing the murder that day. He told the government in one procession that he told Mr. Murphy he saw the murder. I know the point is he would have been stuck with the answer. It would have been a terrible cross-examination. Did you lie when you said you told Murphy about the murder? And he said, no, I told the truth. Mr. Moskowitz would have been stuck with that answer. I'm saying something slightly different, Your Honor. Impeachment by prior inconsistent statements in the 3500 material, a line of impeachment, valuable impeachment was not done because Mr. Murphy gave prior inconsistent statements about where and when and whether he told Mr. Murphy about the murder. So the trial counsel didn't pursue a line of cross-examination where Murphy wouldn't even have to have been called to impeach the cooperating witness on this line. The cooperating witness gave differing accounts of what he did the day of the murder. That's not a collateral issue. That's an issue that would undermine credibility. If someone witnesses a murder, their account of what they did that day after seeing such a traumatic event, one would think, one would remember exactly what they did. So the trial counsel gave up a valuable line of impeachment because he did not want Mr. Murphy's name brought into the record. There was no harm in cross-examining on the prior inconsistent statements. You said there were other things. Yes, Your Honor. Lapse in investigation. Murphy had years-long information, significant information about many individuals named at trial. The cooperating witness, he knew the victim, was friends with the victim, was a pivotal part of this neighborhood. He had deep knowledge of the facts. An unconflicted attorney would sit with this witness who was willing to talk to Mr. Garcia's defense team and garner as much information as possible from this witness. But because of the conflict, he was disincentivized to further pursue information from his own client. Wasn't there an interview of him after the trial?  There wasn't an interview? By Garcia's new counsel? Right. Correct. So usually then you would find out all this information then that would have been helpful and then present to Judge Rakoff, look, if they had fully interviewed him more than the one hour, these other things would have come out and this is how we would have been able to use them. And there was none of that. Garcia's new counsel was investigating the conflict issue. Right. And conflicted attorney remained as Mr. Murphy's defense lawyer at that point and insisted on being present for all of the meetings. So new counsel was not in a place to investigate the trial counsel while he was still representing Mr. Murphy. Mr. Murphy was being fully cooperative with the defense team at that point, right? Was saying things presumably that were going to be helpful to your client. Correct. With his conflicted attorney present, Your Honor, which hindered new counsel's investigation. He might have been present, but there was another attorney involved at that point. Yes, Your Honor. It didn't look like Mr. Murphy was holding anything back at that point, right? New counsel was present with conflicted counsel attempting to investigate the conflict of interest issue. And at the Rule 33 hearing, trial counsel continually raised the attorney-client privilege for Mr. Murphy to bar testimony from trial counsel about the extent of his investigation. New counsel attempted to elicit whether trial counsel actually investigated all of this information, significant years-long worth of information that Mr. Murphy had, and instead invoked Mr. Murphy's attorney-client privilege. Hence, there was the actual conflict. Mr. Murphy intimately knew the victim, was present the day of the murder, possibly not at the murder, was interviewed twice by the NYPD, who obviously thought he was a valuable source of information. He once said two other individuals shot the victim. We don't know the basis of this information. I think that's the problem. It seems to me that we don't know is not helping you. I think you have to be able to explain what defense strategy was foregone or abandoned. And I'm still having trouble understanding it. You keep saying maybe there would have been a better cross. There would have been a better cross, Your Honor. And Mr. Murphy, I'd say his information was not inadmissible. I don't understand even that point. If the failure to do the better cross was the result of conflict, why would it be a conflict if Mr. Moskowitz had shown inconsistencies in Mr. Parker's testimony about what he had said about Murphy and his interactions with Murphy? That's not going to hurt Murphy. How does that hurt Murphy? What's the conflict? The conflict there is that trial counsel has an interest in not having Mr. Murphy become a witness at Mr. Garcia's trial. He could never be a witness at the trial because it's extrinsic evidence. No matter how many contradictions he tried to show with Mr. Parker's prior statements, Mr. Murphy was never going to be a witness on that issue. Or how would he have been a witness? That's what I'm trying to figure out. He also had first-hand knowledge of the gang makeup in the neighborhood and he indicated he would testify at the time of the homicide in 2010. Mr. Garcia was not a gang member at that time. He indicated that would be part of his testimony. He had told the police something separate. He had said the opposite to the police. So if they called him on that, he would have been impeached with you told the police that he was a gang member. In 2014, Your Honor. The murder happened in 2010. So he didn't say in that report that he was a gang member in 2010. Additionally, this was not a collateral issue. What the eyewitness did the day of the murder. That is not a collateral issue. Rule 608B does not bar impeachment by contradiction testimony. And that's clear under Rule 608B. This was impeachment by contradiction. Murphy could have been called to impeach Mr. Parker's testimony. And it's error for the district court to rely on trial counsel's opinion as to the admissibility of Murphy's information. And I'll point you to Malpietti. After the fact testimony by a lawyer who was precluded by a conflict from pursuing a strategy or tactic is not helpful. Even the most candid persons may be able to convince themselves they actually would not use that strategy or tactic anyway when the alternative is a confession of ineffective assistance resulting from ethical limitations. Malpietti directs the district court not to rely on a conflicted attorney's testimony as to whether something is admissible, helpful, unhelpful. That's not for a conflicted attorney to rule on. And here the conflicted attorney indicated he had helpful information. That's trial counsel's testimony. At that point, the conflict already existed. Their interests diverged. Trial counsel's interests diverged with those of Mr. Garcia. At the time, Mr. Murphy indicated he had helpful information because trial counsel had to uphold Murphy's privileges and at the same time had a duty to Mr. Garcia to investigate thoroughly every aspect of the defense. An attorney who is prevented from pursuing a strategy or tactic because of the canons of ethics is hardly an objective judge of whether that strategy or tactic is sound trial practice. Counsel's inability to make such a conflict-free decision is itself a lapse in representation. Here, counsel's decision not to adequately pursue the information Mr. Murphy had by sending a private investigator to discuss this with Mr. Murphy, by preparing beforehand questions based on the extensive mention of Mr. Murphy in the 3500 material, taking those questions to the MDC, spending hours and multiple meetings with this individual who had years-long worth of information and taking notes during that meeting to craft a trial defense to help with cross-examination. This was a valuable source of information for trial counsel, but because of the conflict, he did not pursue that path. The inadequate investigation, plausibly calling Murphy as a defense witness, cross-examination that was plausible, none of this has to be reasonable. The standard for a lapse in representation is plausible, not reasonable. Mr. Murphy doesn't have to be the star witness. He doesn't have to win the day. You just have to show counsel's tactics were influenced by the lapse, and here they were. All right. Well, you have reserved two minutes for rebuttal. Thank you. Leno? Am I pronouncing your name right? Leno. Okay. May it please the Court, my name is Maggie Leno, and I represent the United States today as I did at trial before the District Court. I just want to touch on what Your Honors mentioned to Ms. Sanderson. I think the key point here is that now two years after Mr. Murphy testified at a Rule 33 hearing before the District Court, after full briefing with respect to the Rule 33 issue, affidavits, and that hearing itself, we still don't know what plausible strategy or tactic was supposedly abandoned by Mr. Moskowitz. Let me... Well, it seems to be the one that is getting the most traction is the argument that Ms. Garcia was not a member of the Enterprise at the time of the murder. Why don't we start with that one? Because I don't think you responded to that in your brief. I think that's a curious assertion, Your Honor, because if you look at the affidavit that Mr. Murphy submitted in connection with the Rule 33 motion, there is no mention in that affidavit that he would have testified that Mr. Garcia was not a gang member or the leader of the YGs at the time of the murder. Moreover, at the hearing itself, if you read the transcript closely, it's clear Mr. Murphy did not testify to that there either. There was a question related to that issue. The question was something like, Mr. Murphy, do you remember at a January 2023 meeting at the MDC with the new defense counsel and Mr. Moskowitz, you said Mr. Garcia was not a member of the GMGs or a gang member at that time, and Mr. Murphy said yes to he remembered saying it at that meeting. We have nothing, no affirmation, or any statement under oath that this is the testimony that Mr. Murphy would have offered. Moreover, any such testimony would have been completely contrary to statements they had made in the past and completely contrary to anything in the 3500. Judge Rakoff found at the close of the hearing in a written opinion that Mr. Murphy was a complete and utter liar. There is no reason, there's no record that he made an affirmative statement under oath that he would have said Mr. Garcia was not a gang member or the leader of the GMGs at the time, and to the extent you can credit his testimony, Judge Rakoff has indicated that any crediting should be seriously limited given his complete lack of credibility. So, Your Honors, I'll address the three ways in which the defense has asserted that Mr. Moskowitz's and Mr. Garcia's interests diverged. First, the defense has asserted that Garcia's interest in an exhaustive defense diverged from Murphy's interest in avoiding any exposure that could result from defense investigation. As an initial matter, this is merely a theoretical division in loyalties, which simply does not meet the standard. Additionally, there's no reason to think that Mr. Murphy would somehow have been disadvantaged by defense counsel investigating Mr. Garcia's case. Mr. Moskowitz was free to conduct an investigation based on any information Mr. Murphy provided him, and indeed he testified at the Rule 33 hearing that that's what he did. Furthermore, when Mr. Moskowitz did speak with Mr. Murphy, what he learned in Mr. Roskowitz's words is that Mr. Murphy possessed information that was, quote, devastating to Mr. Garcia's case. Additionally, it has now been over two years since the Rule 33 hearing since Mr. Murphy was put on the stand and asked to testify as to the information he had since new counsel spoke with Mr. Murphy and was given the opportunity to investigate, and there has been nothing that has come to light to suggest that there was any insufficiency there. Second, the defense asserts that Mr. Garcia's interest in vigorously undermining Mr. Parker's testimony diverged from Murphy's interest in not being mentioned at trial. There is no reason to think it would have been contrary to Mr. Mr. Parker's intent to not be mentioned at trial. Defense counsel was fully free to cross-examine Mr. Parker on his own statements. Indeed, defense counsel ably cross-examined Mr. Parker on inconsistencies in his statements for over 100 pages of trial transcript. Third, the defense asserts that Garcia's interest in calling Murphy... What about the argument Ms. Anderson made that he purposely avoided cross-examining on inconsistencies that are related to Murphy because of concerns about Murphy then having to be called as a witness? So I don't think there's any reason to think that Mr. Moskowitz couldn't have asked him, you know, Mr. Parker, did you tell this to Mr. Murphy after... tell Mr. Murphy about the murder afterward. That doesn't negatively impact Mr. Murphy in any way. It simply has to do with Mr. Parker's recollection. But why did he explore inconsistencies about whether he... that he gave to law enforcement about whether he did or did not speak to Mr. Murphy? That's what she was suggesting, that he didn't explore that at all. I mean, there are minor inconsistencies, Your Honor. I spoke to him that day or I spoke to him the next day. I spoke... I mentioned, you know, I'm the one who brought up the murder or he already knew about the murder. There are very minor inconsistencies. There were far more significant inconsistencies, to be honest, in the 3500 for Mr. Parker related to things that were directly related to the murder. And Defense Counsel did explore those extensively on cross-examination. In sum, Your Honors, I just want to say I think this case is analogous to United States v. Faber, which is 333 F3D 110, which involved Defense Counsel who simultaneously represented a defendant and an individual who offered expulgatory testimony. In that case, this court assumed without deciding an actual conflict of interest but found the defendant had not established that the pursuit of the other individual's testimony would have amounted to a plausible alternative trial strategy or that the attorney failed to secure the other individual's testimony because such pursuit was in conflict... was the result of the conflict. You would agree here that the government, once Mr. Moskowitz told him of his representation of Mr. Murphy, should have immediately made Judge Rakoff aware of that and conducted a cursorial hearing. You would agree with that? I would agree with that, Your Honor. Looking back, that certainly would have been the better course of action. The way this came up is that Defense Counsel approached the government with a very specific question about Sherrod Murphy, whether an individual named Sherrod Murphy who went by the nickname of Smash was in fact the Smash in the 3500. The government looked into the question, determined that it believed they were the same person, provided that information to Defense Counsel, but then did not follow up afterwards. The government should have done so. We could have held a cursio, but just because a cursio was not conducted does not mean that there is any cause for a new trial in this case. As was established after the briefing, affidavits, and full hearing before Judge Rakoff, there was no actual conflict and no conflict adversely affected Defense Counsel's performance in this case. Can I just ask you about the evidentiary ruling challenge for a moment? It does seem that the government, in some ways, even though there was no, other than the murder-native racketeering which took place in 2010, that a lot of proof regarding the activities of the gang came in all the way through 2019. I understand that there was a drug charge and a gun charge that covered that entire period, but isn't there some limit as to what the government can put in when they don't have to prove the enterprise during that subsequent period or that the enterprise was involved in all these different racketeering activities? For example, this is the one that kind of jumped out at me. Maybe I'm missing something. A 2019 carjacking committed by Watson and other members. How does that show Mr. Garcia's guilt on the gun or the drug charges? Your Honor, I just want to make clear, Judge Rakoff was policing what additional evidence came in related to additional acts of violence regarding the later time period. As Your Honor stated, the additional acts of violence were related to the gun and drug charges. With respect to the carjacking, it was part of the drug territory which went to the narcotics conspiracy. Was there evidence that Garcia was involved in that dispute or that he participated, ordered anything related to the carjacking? There was evidence that the GMGs were involved in that dispute, which was his drug group. So the drug trafficking, the drug conspiracy was inexplicably intertwined with the gang because the gang was the ones who were doing the drug trafficking. So it was a dispute over the drug territory and then it also involved guns following the carjacking. The narrative is that the carjacking was the start of the incident and then the individuals involved, the GMGs, went and got guns, which they were using to defend their drug territory, which goes to the drug counts. I know, but it can't be that any gun-related incident involving the gang comes in under that theory, right? Understood, Your Honor. But in this case, Judge Rakoff was policing what came in and in addition, I would say that there is a harmlessness argument here. There was a lot of evidence presented about drugs, about the guns, and this additional piece of evidence doesn't meet the harmfulness standard. Thank you. That sounds like you're conceding error. A minute ago you were suggesting that this was relevant to the conspiracy, the existence of it. Your Honor, I'm not conceding error. My apologies. I certainly didn't mean to imply that. It's just that it was part of the conspiracy. It was appropriately admitted as direct evidence, but in any event, it would be harmless. Unless the Court has any further questions, I'll rest on the submissions. All right, thank you. Ms. Sanderson, you have two minutes for rebuttal. Thank you, Your Honor. I'd like to discuss the government's claim that prior inconsistent statements were minor inconsistencies. A good defense lawyer cross-examining with prior inconsistent statements from an eyewitness to a murder as to what he did after witnessing the murder and whether he told someone that day could make the witness look like a complete and total liar. He could have convinced a single juror. That's all it could have took for Mr. Garcia to get acquitted of the count one murder in aid of racketeering if they didn't believe him based on those prior inconsistencies. Mr. Murphy also indicated at his meeting and that's in Confidential Appendix 113 that Mr. Garcia at the time of the homicide in 2010 was not a gang member. And perhaps there was an inartful question at the hearing, but that's what he indicated. The failure case is distinguishable. Here we have additional There was a failure to cross-examine on inconsistencies. Like in Malpieti, there was a failure to investigate and in Fayette that witness was unavailable in part also because he had independent counsel and decided to withdraw his willingness to testify. Credibility after the fact of Mr. Murphy based on a district judge's questions at a Rule 33 hearing should not be considered very heavily. It should have been for the jury to determine if he were called as a witness. And he would have been prepared differently by independent defense counsel were he to have been called. Mr. Moskowitz had said that Mr. Murphy would have been devastating against Garcia. And so I guess I'd like to hear your response to that. Yes, Your Honor, and I would respectfully point Your Honors to the Malpieti case which indicates that a conflicted attorney who's operating with an actual conflict, when they provide testimony after the fact at a hearing as to their opinion of that information or trial strategy, it's not to be given weight. Even, obviously, counsels who intend well may have a conflict that is impeding their trial strategy without it being intentional. So you're saying you would have called him? And I guess I'm trying to figure out, you would have called him even though he had testimony that would have, at least some of which would have been bad for your client about drug dealing and about guns? Your Honor, I don't know that he has that harmful information, but his helpful information was on the murder count which carried life without parole, and the harmful information, if we credit trial counsel's opinion on that, is to other counts that didn't carry mandatory life without parole. So there could have been a strategic reason for calling him. He also was willing to talk about certain things. While he raised his privilege on some issues, he spoke about the eyewitness, so he was not fully unavailable as a witness. Again, it doesn't have to be reasonable, just plausible. You also don't need to show that trial counsel was disadvantaged to prove an actual conflict. You just have to show he had privileged information from one client, Mr. Murphy, that was relevant and helpful to Mr. Garcia's defense. Under levy, that is an actual conflict of interest. For those reasons, Your Honor, Mr. Garcia is entitled to a new trial. His trial counsel had violated his Sixth Amendment rights by operating with an actual conflict that caused multiple lapses in representation, both in the investigatory phase and at trial. Thank you.